UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID ANDERSON,

        Plaintiff,                               Case No. 2:13-cv-343

v.                                               HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

In June 2007, Plaintiff David Anderson filed an application for disability insurance benefits and Supplemental Security Insurance.  See Transcript of Administrative Hearing at pages 199-206 (hereinafter Tr. at ___).  Plaintiff's application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ).  A hearing was held on May 20, 2009, and the claim was denied.  The Appeals Council issued a remand order on January 28, 2010.  Tr. at 62-65.  ALJ Timothy J. Malloy held a hearing after remand on May 24, 2012.  Tr. at 9-41.  At the hearing, medical expert Paul A. Boyce, M.D., vocational expert Jane E. Carmichael, and Plaintiff testified.  Plaintiff was represented by attorney Rudolph F. Perhalla.

Dr. Boyce testified that he reviewed Plaintiff's medical records and determined that Plaintiff was diagnosed with diabetes, peripheral neuropathy and had coronary bypass surgery.  Tr. at 14-15.  Plaintiff had two CE examinations performed by Dr. Rocco.  Dr. Rocco noted decreased sensation in the left lower extremity.  Tr. at 16.  Dr. Boyce stated that Plaintiff would be capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently.  Tr. at 17  Plaintiff has no

sitting restrictions and should be able to stand for six hours. *Id*. Plaintiff should be able to walk, push and pull, bend, stoop, crouch, crawl, and kneel without restrictions and balance occasionally. However, restrictions included no overhead work or work with his left upper extremity. Plaintiff had no restrictions in grasping or fine manipulation, but should not work in the extreme cold or from unprotected heights. Tr. at 18. Since Plaintiff was taking insulin, he would be precluded from operating machinery in the workplace or driving a vehicle commercially. *Id*. Dr. Boyce noted that the level of severity of Plaintiff's neuropathy was not well documented, but would not prevent Plaintiff from standing for six hours out of an eight-hour day. Tr. at 19. Dr. Boyce also admitted at the hearing that he did not know the extent of Plaintiff's coronary artery disease. Tr. at 20. Although Dr. Rocco placed greater limitations on Plaintiff, Dr. Boyce concluded that there were inconsistencies in his finding, citing as an example that Dr. Rocco opined that Plaintiff could not use his left hand, but there existed no objective reason for that restriction.

  Plaintiff testified that he barely graduated from high school and took some special classes. Tr. at 22. Plaintiff lost his drivers license after he fell asleep at the wheel causing an accident. *Id*. Plaintiff is not working and his parents help him financially. Plaintiff lives on his own in a trailer house owned by his parents. Tr. at 23. His daily activities include taking care of his dogs, eating breakfast, sitting around watching television and visiting with friends. Tr. at 23-24. Plaintiff spends time outside sitting at his picnic table and drinking coffee. Plaintiff reads a lot of magazines and likes to cook. Tr. at 25. Plaintiff used to fish, but no longer can afford the license. Plaintiff camps and swims a little bit. *Id*.

  Plaintiff explained that due to his bypass surgery, he does very few activities. Tr. at 27. Plaintiff can walk, but needs to take breaks. Plaintiff no longer works because he cannot do heavy lifting and has a learning disability. Tr. at 28. Plaintiff was working as a logger and

landscaper for his dad. Plaintiff had worked for a casino, giving change, but was let go because he had too many "call-ins" and lost his driver's license at that time. *Id*. Plaintiff stated that his learning disability affects his attention span. *Id*. Plaintiff was not currently looking for employment. Tr. at 29. Instead, Plaintiff was focusing on his disability. Tr. at 30. Plaintiff suffers with tingling in his leg and pain in his left hand that limits his ability to hold a glass of water. *Id*. Plaintiff stated that he rides his bike to get around, but has to stop every couple of blocks to catch his breath. Tr. at 31. Plaintiff does light duty work around his house such as dusting and picking things up, but his parents and brother help with heavier chores. Tr. at 32. Plaintiff indicated he can only stand for limited periods of time and then has to sit down. *Id*. Plaintiff is capable of bending, but cannot squat. Tr. at 34. In addition to insulin, plaintiff takes Quinapril, Metoprolol, Nortriptyline and other medications. *Id*. Plaintiff uses Ibuprofen for pain as needed. Tr. at 36.

The ALJ asked Vocational expert Carmichael to assume that an unskilled individual limited to simple tasks who could work at the light level, but would not be able to climb ladders, ropes or scaffolds and be occasionally limited in climbing stairs and ramps and occasionally limited in balancing, could not overhead reach to the left, would have to avoid exposure to cold and heat, could not use moving machinery or be exposed to unprotected heights, who required to be off task five percent of the day, had occasional decision making responsibility, worked individually with occasional public interaction could perform Plaintiff's past relevant work as a casino change vender? Tr. at 38. The Vocational expert indicated that individual could perform in all respects, except for the requirement of occasional public contact. However, there exist a number of jobs in the economy that a person with those restrictions could perform such in hand packaging, with about 5,000 jobs in Michigan that exist, gate tender or building watch with about 7,000 jobs in Michigan, and hand assembly jobs with about 40,000 jobs in Michigan. If that individual's exertion level dropped to

sedentary, that would reduce hand assembly jobs to about 6,500.  Gate tender jobs would be about 3,500 and inspector, testers or graders with about 3,000 jobs.  If that individual went off task ten percent of the time or would miss more than two days per month that would eliminate all jobs.  Tr. at 39.

Dr. Rocco evaluated Plaintiff on two occasions in August and October 2011.  Although there are some minor inconsistencies in each of the two assessments, the inconsistencies are insignificant.  Dr. Rocco found that Plaintiff was able to open a jar, button clothing, write legibly, pick up a coin, and tie shoelaces.  Tr. at 344, 368.  Plaintiff was able to squat and stand, but unable to do heel to toe walk.  *Id.*  Plaintiff had decreased range of motion in his left shoulder and was positive for peripheral neuropathy.  Tr. at 345, 368.  Dr. Rocco concluded that Plaintiff could lift and carry up to 10 pounds frequently.  Tr. at 351.   Plaintiff could sit for four hours, stand for one hour, and walk for one hour out of an eight-hour day.  Tr. at 352.  Plaintiff has occasional use of his hands for reaching, handling, fingering, feeling and pushing and pulling.  Tr. at 353.  Plaintiff could use his right foot occasionally to use foot controls, but could not use his left foot due to diabetes neuropathy.  *Id.*  Dr. Rocco concluded that while Plaintiff could engage in activities, he could not travel without assistance, walk a block at a reasonable pace on rough or uneven surfaces, and could not handle sort or use paper files.  Tr. at 356.  Dr. Rocco attributed this to Plaintiff's learning disability.  *Id.*

In April of 2011, Dr. Hubbard reported that Plaintiff's diabetes was well controlled with no evidence of neuropathy with normal monofilament testing bilaterally.  Tr. at 378.  Plaintiff's blood pressure met the goal of less than 130/80, his LDL met the goal of less than 100 and he was reportedly stable for coronary artery disease.  Tr. at 379.

After the hearing, the ALJ denied Plaintiff's claim for disability and supplemental security income. The ALJ found that Plaintiff has "significant functional limitations," but is not precluded from full-time work. Tr. at 76. The ALJ relied on Plaintiff's medical records and the statements Plaintiff made to his treating physicians, rather than the statements Plaintiff made to Dr. Rocco in the consultative examinations. The ALJ determined that Dr. Boyce's conclusions were supported by medical evidence and more credible than the opinions of Dr. Rocco. Further, the ALJ credited Dr. Cappone's examination that Plaintiff suffered with anxiety and a depressed mood and was rigid socially. The ALJ found that Plaintiff should be limited to unskilled work which involves simple, repetitive tasks performed individually. Plaintiff could perform jobs that were low stress with only occasional interaction with coworkers or the public. After the denial, Plaintiff then filed this action.[1]

The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Human and Health Serv.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if evidence supports an alternative conclusion.

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases

---

[1] Both parties consented to proceed before a Magistrate Judge on January 21, 2014.

5

and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.* At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since April 30, 2006, the alleged onset date. Tr. at 71. At step two, the ALJ determined Plaintiff has the severe impairments of diabetes mellitus, coronary artery disease, adjustment disorder and personality disorder. *Id.* At step three, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. Tr. at 72. At step four, the ALJ determined Plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. 4o4.1567(b) and 416.967(b), "with the following nonexertional limitations: no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; only occasional overhead lifting with the left upper extremity; avoid all exposure to the extremes of cold and heat, as well as moving machinery and unprotected heights; unskilled work only, which involves simple, routine and repetitive tasks that are performed individually; must be able to be off task 5% of the workday aside from scheduled breaks; low stress job only (defined as requiring only occasional changes in the work setting and occasional decision making; only occasional interaction with coworkers or the public." Tr. at 72. At step five, the ALJ determined there were jobs that existed in significant numbers in the national economy that the claimant could perform. Tr. at 77.

      The medical record shows that Plaintiff's cardiac impairment is stable and his diabetes was controlled. The ALJ's assessment that the medical expert Dr. Boyce's opinions were entitled to greater weight than the consultive expert Dr. Rocco's opinions was based upon the medical record and evidence presented. Plaintiff was not being treated with medication for a mental impairment and denied receiving any psychiatric or psychological services. The extent of Plaintiff's mental impairment was considered by the ALJ in determining the types of jobs Plaintiff could perform in

6

the economy.  Plaintiff's medical evidence and his daily activities supported the finding that Plaintiff was not disabled as defined by the Social Security Administration.  There is substantial evidence in the record supporting the finding that Plaintiff is capable of performing sedentary and light work, which is available in the region.  This Court must uphold the Commissioner's decision if it is supported by  substantial evidence.  After reviewing the record, I conclude that there is substantial evidence supporting the Commissioner's decision.  The medical evidence of record does not support Plaintiff's claim that he is disabled.  The record provides substantial support to the Commissioner's decision that Plaintiff is not under a disability as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 6, 2015